UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MELODY MAYO and MIMI YEUNG

Plaintiffs,

-against-

FRESH DENTAL, P.C., d/b/a GROUP HEALTH DENTAL FACILITY, ESMIRA JADADIC and DAVID JANASH,

Defendants.
-------------------------------------------------------------X

Case No.:

**COMPLAINT**

**Jury Trial Demanded**

Plaintiffs, MELODY MAYO ("Ms. Mayo" or "Plaintiff Mayo") and MIMI YEUNG ("Dr. Yeung" or "Plaintiff Yeung") (collectively, "Plaintiffs"), by and through their attorneys, THE SELTZER LAW GROUP P.C., file this Complaint against Defendants FRESH DENTAL P.C., d/b/a GROUP HEALTH DENTAL FACILITY ("Group Health"), , ESMIRA JADADIC ("Defendant Jadadic"), and DAVID JANASH ("Dr. Janash") (collectively, "Defendants"):

**PRELIMINARY STATEMENT**

1. Plaintiff Mayo makes claims of sexual harassment that created a hostile work environment against Defendants after being subjected to severe, pervasive and unwelcomed sexual harassment perpetrated by one of the dentists whom was then-employed by Group Health. Defendant Jadadic, the office manager, and Dr. Janash, the principal and owner of Group Health, failed to adequately investigate Plaintiff Mayo's complaints, ignored Plaintiff Mayo's complaints, and failed to take prompt corrective or remedial action. Upon learning of Plaintiff Mayo's and other individuals' complaints of inappropriate sexual and gender-offensive behavior by Dr. Nagy, Plaintiff Yeung reported this discriminatory conduct to Defendants as well as her opposition to the unlawful behavior. In response to Plaintiff Yeung's opposition, Defendants subjected Plaintiff Yeung to retaliation by terminating her services for Group Health.

2. Plaintiffs bring this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e; New York State Human Rights Law, N.Y. Exec Law §§ 290 to 297; New York City Human Rights Law, New York City Administrative Code § 8-107(a)(1), (6) and (7), et seq.; and New York City Administrative Code §

8-130, et seq. Plaintiffs seek appropriate monetary relief as well as appropriate equitable and other relief to redress the wrongdoing complained of herein.

## STATEMENT PURSUANT TO LOCAL RULE 9

3. For purposes of complying with Local Rule 9, Plaintiffs state that they have no corporate parent, subsidiary or affiliate, and that there are no other interested parties.

## JURISDICTION AND VENUE

4. Plaintiffs invoke this Court's jurisdiction pursuant to 29 U.S.C. § 201 et seq., including 29 U.S.C. 216(b), and 28 U.S.C. § 1331.
5. This District has supplemental jurisdiction over Plaintiffs' New York City and New York State claims pursuant to 28 U.S.C. § 1367(a).
6. Venue is proper in this District, pursuant to 28 U.S.C. § 1391, because the conducts giving rise to this action occurred in this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. On April 8, 2014, each Plaintiff filed her own individual Charge of Discrimination ("Charge of Discrimination") with the United States Equal Employment Opportunity Commission (EEOC) against the Defendants.
8. In said Charges of Discrimination, Plaintiff Mayo alleged sexual harassment and hostile work environment against Defendants while Plaintiff Yeung alleged retaliation against Defendants.
9. Plaintiff Mayo was assigned Charge No. 520-2014-01862.
10. Plaintiff Yeung was assigned Charge No.: 520-2014-01863.
11. On June 29, 2016, the EEOC issued each Plaintiff a "Notice of Right to Sue within 90 Days" to with reference to their Charges of Discrimination.
12. Plaintiffs filed their initial Complaint in this matter within the time prescribed by the Notice of Right to Sue.
13. Plaintiffs demand a jury trial to resolve all issues in this action.

## PARTIES

14. Plaintiff Melody Mayo is a natural person residing in Queens County in the State of New York.
15. Plaintiff Mayo is a female.
16. Plaintiff Mimi Yeung is a natural person residing in Queens County in the State of New York.
17. Plaintiff Yeung is a female.
18. Defendant Group Health is a domestic professional corporation with a principal place of business at 230 W 41st Street, 2nd Floor, New York, New York 10036.
19. Defendant Esmira Jadadic is a natural person, who is an office manager at Group Health.
20. Defendant David Janash is a natural person, who is the principal and owner of Group Health.

## FACTUAL ALLEGATIONS

21. According to its website, Group Health is a "comprehensive dental practice located near Midtown Manhattan."

**Plaintiff Mayo**

22. Group Health employed Plaintiff Mayo as a dental assistant and treatment coordinator from March 2012 until February 2014, when she resigned.
23. Arnold Nagy ("Dr. Nagy"), a natural person, was a dentist at Group Health.
24. Dr. Nagy is a male.
25. Plaintiff Mayo was assigned as Dr. Nagy's dental assistant in April 2012.
26. Plaintiff Mayo was assigned to work directly and exclusively with Dr. Nagy on a full-time schedule, which was a total of forty hours over five days per week.
27. Plaintiff Mayo worked directly and exclusively as Dr. Nagy's dental assistant on a full-time schedule until June 2013.
28. Plaintiff Mayo spent majority of her work hours in Dr. Nagy's presence.
29. Dr. Nagy supervised Plaintiff Mayo's clinical work.
30. Dr. Nagy's sexually harassing behavior with respect to Plaintiff Mayo began in or about summer 2012.

31. For instance, on two to three occasions weekly, Dr. Nagy would ask Plaintiff Mayo to leave him alone with female patients in an operatory so he could ask female patients out on dates.
32. On multiple occasions, Dr. Nagy asked Plaintiff Mayo to find out for him if female patients were involved in relationships so he could ask patients out on dates.
33. On multiple occasions, Dr. Nagy asked Plaintiff Mayo to look at electronically stored photographs of female patients and asked if she thought they were "hot."
34. On approximately ten occasions, Dr. Nagy observed red circles at the back of female patients' throats during examinations and indicated with an offensive physical gesture (vertically gyrating his clenched fist near his mouth) that this was the result of oral sexual activity.
35. During the summer of 2012, Dr. Nagy stated to Plaintiff Mayo that while he was on a hiking trip, his genitals became covered with poison ivy and that he "touched himself down there."
36. In December 2012, Dr. Nagy insisted that Plaintiff Mayo remain with him in his operatory when no patients were present and for no business-related reason.
37. Dr. Nagy's insistence of Plaintiff Mayo be alone with him made Plaintiff Mayo extremely uncomfortable.
38. In January 2013, Dr. Nagy directed his sexual misconduct at Plaintiff Mayo after learning Plaintiff Mayo has ended a then-existing romantic relationship.
39. Dr. Nagy stated to Plaintiff Mayo, "So now we can have sex."
40. In response, Plaintiff Mayo told Dr. Nagy that she refused to engage in sexual intercourse with him.
41. Dr. Nagy frequently boasted about his private sex life to Plaintiff Mayo at work.
42. For instance, but only by way of example, on approximately five occasions, Dr. Nagy showed Plaintiff Mayo photographs of a woman (whom he was then-dating) being either topless or wearing only revealing undergarments.
43. Dr. Nagy told Plaintiff Mayo that the woman depicted in the photographs "gave him amazing head" but that his sexual intercourse with her was "not that great" because "she would just lay there" and that he "like[d]" to hit it from behind."

44. On one occasion, Dr. Nagy showed Plaintiff Mayo a photograph on his smartphone of another male's penis which appeared to have been sent to him as a text message by another male.

45. On one occasion, while Plaintiff Mayo was charging her smartphone at work, a man whom Plaintiff Mayo was then-involved with sent a private photograph of himself to Plaintiff Mayo's phone via text message and Dr. Nagy accessed Plaintiff Mayo's phone and viewed the photograph without permission,.

46. Dr. Nagy admitted to this misconduct and explained to Plaintiff Mayo that he "wanted to see what [they] were talking about."

47. Dr. Nagy would frequently made inappropriate comments to Plaintiff Mayo about her physique.

48. For instance, on one occasion, Dr. Nagy told Plaintiff Mayo that he liked the gap between her legs.

49. Then on another occasion, before she put on her work scrubs, Dr. Nagy said to Plaintiff Mayo, "Those are your boobs? They are really nice."

50. Dr. Nagy would also frequently commented that he thought Plaintiff Mayo was having her period.

51. On at least ten instances, Dr. Nagy showed Plaintiff Mayo photographs of female models on a desktop computer in his assigned operatory and directed Plaintiff Mayo's attention to the gaps between the thighs of these women.

52. Plaintiff Mayo learned that a previous dental assistant whom also worked for Group Health resigned because another dentist once joked that Dr. Nagy was filming a pornographic movie in his operatory since he occupied it with the lights turned off.

53. Dr. Nagy informed Plaintiff Mayo that Dr. Nagy was terminated from his prior employment with another dental office in Massachusetts because a dental assistant at that facility complained that Dr. Nagy had subjected her to sexual harassment.

54. In late 2012, Defendant Jadadic approached Plaintiff Mayo and asked whether Dr. Nagy was asking patients out on dates.

55. Plaintiff Mayo informed Defendant Jadadic that Dr. Nagy was asking patients out on dates and was dating a patient.

56. In early 2013, other dental assistants and hygienists were discussing that they overheard patients complaining about Dr. Nagy making sexual advances toward them.
57. Group Health management were notified, informed and made aware about these discussions.
58. In early 2013, Defendant Jadadic asked Plaintiff Mayo whether Dr. Nagy was still asking patients out on dates.
59. In early 2013, Plaintiff Mayo confirmed to Defendant Jadadic that Dr. Nagy was still asking patients out on dates.
60. The accumulation of Plaintiff Mayo's unpleasant experiences with Dr. Nagy caused Plaintiff Mayo to be upset which lead to her crying in the hallway at work.
61. Defendant Jadadic saw Plaintiff Mayo crying in the hallway and asked her what was wrong.
62. Plaintiff Mayo told Defendant Jadadic that she could not take working with Dr. Nagy and that she was uncomfortable working with him.
63. Defendant Jadadic told Plaintiff Mayo to calm down and that everything would be alright.
64. Dr. Nagy's sexual harassment continued after Defendant Jadadic told Plaintiff Mayo that everything would be alright.
65. Approximately two weeks later, Dr. Janash took Plaintiff Mayo out to lunch.
66. During the lunch meeting, Dr. Janash asked Plaintiff Mayo whether Dr. Nagy was still asking female patients out on dates.
67. Plaintiff Mayo told Dr. Janash that Dr. Nagy continued to ask female patients out on dates and she was uncomfortable working with Dr. Nagy.
68. Dr. Janash told Plaintiff Mayo that he would try to re-assign Plaintiff Mayo to work with a different dentist but added that Plaintiff Mayo's working relationship with Dr. Nagy was similar to a marriage where it has its ups and downs and she had to "work through it."
69. Dr. Janash did not re-assign Plaintiff Mayo to work with a different dentist.
70. In April 2013, Defendant Jadadic informed Plaintiff Mayo that a nineteen-year-old patient complained that Dr. Nagy touched her genital area in his operatory.

71. Defendant Jadadic asked Plaintiff Mayo whether Plaintiff Mayo witnessed such an episode.
72. In June 2013, Plaintiff Mayo registered a written complaint to Defendant Jadadic detailing Dr. Nagy's sexual misconducts.
73. Despite Plaintiff Mayo's written complaint, Defendants did not remove Plaintiff Mayo from Dr. Nagy's supervision.
74. Despite Plaintiff Mayo's written complaint, Defendants compelled Plaintiff Mayo to continue to work alone with Dr. Nagy.
75. Defendants were made aware of Dr. Nagy's sexually harassing behavior since 2012 but did not terminate Dr. Nagy's employment until July 2013.
76. In January 2014, Plaintiff Mayo was summoned to meet with Dr. Janash and Defendant Jadadic.
77. Dr. Janash and Defendant Jadadic asked Plaintiff Mayo about Dr. Nagy's interactions with a specific female Group Health patient.
78. Plaintiff Mayo informed Dr. Janash and Defendant Jadadic about an occasion when Dr. Nagy made a comment to that patient that [he] liked the gap between her legs and took a photograph of her crotch area.
79. To which, Dr. Janash and Defendant Jadadic responded with laughter.
80. Dr. Janash and Defendant Jadadic then explained to Plaintiff Mayo that they were "just laughing about the situation."
81. As a result of being exposed to the hostile working environment, Plaintiff Mayo suffered significant emotion distress and anxiety causing her to break out in hives at work.
82. As a result of being exposed to the hostile working environment, Plaintiff Mayo experienced health problems including, but not limited to, multiple anxiety attacks at work.
83. Defendants engaged in discriminatory practices.
84. Dr. Nagy had a favored status with Dr. Janash and Group Health.
85. Defendants did not take prompt and/or effective remedial action against Dr. Nagy after being notified about Dr. Nagy's sexual misconducts at work.

86. Upon information and belief, Dr. Nagy was consistently assigned to work on patients who were insured under the most lucrative dental plans.

87. Upon information and belief, dentists at Group Health received compensation based upon the amount of income earned from their work.

88. Upon information and belief, Dr. Nagy earned greater compensation than other dentists at Group Health.

89. Upon information and belief, Dr. Nagy performed personal dental work on Dr. Janash which demonstrates Dr. Janash held Dr. Nagy in very high esteem.

90. Dr. Janash and Group Health turned a blind eye to Dr. Nagy's sexual misconduct.

91. On February 3, 2014, Plaintiff Mayo notified Group Health of her resignation and her desire to work for another dental office.

**Plaintiff Yeung**

92. Plaintiff Yeung is a dentist licensed to practice dentistry in the State of New York.

93. Group Health and Dr. Janash employed Plaintiff Yeung as a dentist from 2008 until February 7, 2014, when she was terminated.

94. Group Health and Dr. Janash exercised significant supervision and control over Dr. Yeung's performance of her responsibilities.

95. Group Health selected their patients and assigned them to their dentists, including Plaintiff Yeung.

96. Group Health, not Plaintiff Yeung, scheduled appointments for patients.

97. Plaintiff Yeung was required to adhere to Group Health's set work schedule.

98. There were occasions in which Group Health required Plaintiff Yeung to work early or stay late.

99. Group Health required Plaintiff Yeung to complete forms in order to request time off from work so Group Health can either deny or approve said requests.

100. One on occasion, Defendant Jadadic responded hostilely to Plaintiff Yeung's request for time off because she submitted one week prior to the requested time.

101. Group Health, not Plaintiff Yeung, input and determined all billing information that was needed to generate invoices.

102. Plaintiff Yeung only input information into the medical charts of the patients she serviced..

103. In 2012, Plaintiff Mayo informed Plaintiff Yeung that Dr. Nagy was making inappropriate comments to Plaintiff Mayo about Plaintiff Mayo's physical appearance and his physical preferences in women.

104. In addition to being informed by Plaintiff Mayo, another Group Health dental hygienist reported to Plaintiff Yeung that multiple female patients had complained about Dr. Nagy asking them out on dates.

105. Plaintiff Yeung learned that Dr. Nagy has caressed the hands of patients on more than one occasion; "friended" a patient on Facebook; and utilized at least one patient's private phone number.

106. A female Group Health patient complained to Plaintiff Yeung that Dr. Nagy was constantly asking her out on dates.

107. The patient also complained to Plaintiff Yeung that Dr. Nagy took a photograph of her crotch area after commenting that he preferred women, such as this patient, who were slender enough to have space between their thighs.

108. In the summer of 2012, Plaintiff Yeung reported Dr. Nagy's sexually harassing conducts to Dr. Janash and Defendant Jadadic.

109. Dr. Janash and Defendant Jadadic informed Plaintiff Yeung that they would look into the matter.

110. However, Dr. Nagy remained employed by Group Health after this discussion and his sexually harassing conducts continued.

111. In the spring of 2013, Plaintiff Yeung brought the issue of Dr. Nagy's sexually harassing conduct up with Dr. Janash again.

112. Plaintiff Yeung informed Dr. Janash that Plaintiff Yeung could not continue to work at Group Health if Dr. Nagy remained employed.

113. Faced with the prospect of losing one of Dr. Janash's most valued dentist, Dr. Janash finally terminated Dr. Nagy's employment in July 2013.

114. On February 7, 2014, the defendants seized their first opportunity to terminate Plaintiff Yeung's employment.

115. Dr. Janash's termination of Plaintiff Yeung's employment was a direct response to Plaintiff Yeung's opposition to the sexually harassing conduct and the hostile environment at Group Health.

116. Dr. Janash falsely accused Plaintiff Yeung of hiring Plaintiff Mayo away from Group Health to work for Plaintiff Yeung's independent dental practice.
117. During Plaintiff Yeung's employment with Group Health, Defendants were fully aware of and consented to Plaintiff Yeung's independent dental practice.
118. Plaintiff Yeung did not hire Plaintiff Mayo to work for her independent dental practice.
119. Instead, Plaintiff Mayo accepted a position with another dental facility.
120. In an attempt to justify Dr. Janash's actions, Dr. Janash informed Plaintiff Yeung that her supposed hiring of Plaintiff Mayo was the "third strike" which necessitated the termination of Plaintiff Yeung's employment.
121. Plaintiff Yeung was never informed that Group Health had a "three strikes" termination policy because no such policy existed at Group Health with respect to dentists.
122. Dr. Janash also accused Plaintiff Yeung of diverting a patient from Group Health to her independent dental practice.
123. Plaintiff Yeung did not divert any corporate opportunity away from Group Health.
124. Certain work performed upon that patient at Group Health was inadequate, deficient and required correction.
125. Group Health insisted upon charging the patient for the inadequate, deficient and corrective work.
126. The patient felt that the additional charges were not appropriate so she decided not to have the corrective work performed at Group Health.
127. The patient's corrective work was performed at Plaintiff Yeung's independent dental practice without charge.
128. Plaintiff Yeung did not usurp any corporate opportunity from Group Health.
129. Plaintiff Yeung did not entice the patient to discontinue her relationship with Group Health.
130. Plaintiff Yeung did not interfere with the patient's relationship with Group Health.
131. The patient terminated her relationship with Group Health before discussing her corrective work with Plaintiff Yeung.
132. Dr. Janash further accused Plaintiff Yeung of hiring another Group Health dentist to perform outside work at her independent dental practice during his personal time.

133. This dentist was not performing outside work at Plaintiff Yeung's independent dental practice during Group Health's time.

134. Group Health permitted and authorized this particular dentist to routinely perform outside work at other dental practices.

135. Group Health permitted and authorized this particular dentist to perform outside work at Plaintiff Yeung's independent dental practice.

136. Defendants never told Plaintiff Yeung prior to February 7, 2014 that the work performed by this dentist at her independent dental practice was objectionable.

137. Prior to February 7, 2014, Defendants never criticized Plaintiff Yeung's job performance or took any disciplinary action against Plaintiff Yeung.

138. Defendants retaliated against Plaintiff Yeung by not paying her for the work she performed at Group Health during the final two months of her employment.

139. Defendants violated Plaintiff Yeung's employment contract with Group Health.

140. Defendants falsely informed various third parties that Plaintiffs were unlawfully soliciting Group Health's clients.

141. This conduct by the Defendants defamed Plaintiff Yeung's character and professional reputation.

142. This conduct by the Defendants was a product of retaliation for Plaintiff Yeung's opposition to the sexually harassing conduct and the hostile environment at Group Health.

143. As a result of being exposed to the retaliation, Plaintiff Yeung suffered lost wages, other employment-related benefits and income.

**FIRST CAUSE OF ACTION**
**(Hostile Work Environment and Sexual Harassment On Behalf of Plaintiff Mayo– Title VII, 42 U.S.C. § 2000e-2)**

144. Plaintiffs hereby repeat and re-allege each and every allegation contained within paragraphs "1" through "143" as though fully set forth at length herein.

145. Plaintiff Mayo has exhausted her administrative remedies under Title VII of the Civil Rights Act of 1964, as amended.

146. Defendants discriminated against Plaintiff Mayo because of her gender in violation of Title VII, 42 U.S.C. § 2000e-2, by engaging in, tolerating or failing to prevent the gender-based harassment alleged herein and by failing to take affirmative action to correct and redress these unlawful employment practices.

147. During Plaintiff Mayo's employment, Dr. Nagy subjected Plaintiff Mayo to a barrage of unwelcome, undesirable and offensive comments and/or conducts.

148. Plaintiff Mayo clearly indicated that the comments and/or conducts were unwelcome.

149. Plaintiff Mayo did not solicit or incite the comments and/or conducts and she perceived the comments and/or conducts to be offensive and undesirable.

150. These comments and/or conducts of harassment described above were because of Plaintiff Mayo's gender.

151. These comments and/or conducts of harassment suffered by Plaintiff Mayo was sufficiently pervasive and/or severe to alter and did alter a condition of Plaintiff Mayo's employment and created an abusive working environment.

152. Plaintiff Mayo was detrimentally affected by the comments and/or conducts and such comments and/or conducts would have detrimentally affected a reasonable woman in Plaintiff Mayo's position.

153. Defendants knew and/or should have known of the harassment and failed to take prompt and/or effective remedial action.

154. Defendants' unlawful and discriminatory actions were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff Mayo's rights under the Title VII for which Plaintiff Mayo is entitled to recover compensatory damages and punitive damages in an amount to be determined at trial, expungement of all discriminatory motivated records, together with appropriate interest thereon, and an award of attorneys' fees, expert fees, costs and disbursements.

**SECOND CAUSE OF ACTION**
**(Sexual Harassment and Hostile Work Environment under the New York State Human Rights Law and the New York City Human Rights Law on Behalf of Plaintiff Mayo)**

155. Plaintiffs hereby repeat and re-allege each and every allegation contained within paragraphs "1" through "154" as though fully set forth at length herein.

156. Defendants has discriminated against Plaintiff Mayo on the basis of her gender in violation of the NYSHRL and the NYCHRL by subjecting Plaintiff Mayo to disparate treatment based upon her gender including, but not limited to, subjecting her to unwelcome sexual harassment and a hostile work environment.

157. Plaintiff Mayo did not solicit or incite the unwelcome sexual harassment nor the hostile work environment.

158. Plaintiff Mayo regarded Dr. Nagy's sexual misconduct as undesirable and offensive.

159. Dr. Nagy's sexual harassment of Plaintiff Mayo affected a term, condition and/or privilege of Plaintiff Mayo's employment.

160. Plaintiff Mayo was sexually harassed by Dr. Nagy because Plaintiff Mayo is a woman.

161. Plaintiff Mayo objected to the aforesaid conduct and complained of such conduct to no avail.

162. Defendants ignored Plaintiff Mayo's objections and complaints, and refused to take corrective or remedial action and Plaintiff Mayo continued to be sexually harassed by Dr. Nagy.

163. Defendants knew and/or should have known of the sexual harassment and failed to take remedial action.

164. Because of Defendants' positions, and the refusal of the Defendants to take corrective or remedial action, there was no reasonable opportunity for Plaintiff Mayo to complaint of said harassing conducts.

165. Plaintiff Mayo was treated less well than other employees of Defendants that were outside of her protected class on account of her gender.

166. Defendants' unlawful and discriminatory actions were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff

Mayo's rights under the NYSHRL and NYCHRL for which Plaintiff Mayo is entitled to recover compensatory damages and punitive damages in an amount to be determined at trial, expungement of all discriminatory motivated records, together with appropriate interest thereon, and an award of attorneys' fees, expert fees, costs and disbursements.

**THIRD CAUSE OF ACTION**
**(Retaliation on Behalf of Plaintiff Yeung – Title VII, 42 U.S.C. § 2000e-2)**

167. Plaintiffs hereby repeat and re-allege each and every allegation contained within paragraphs "1" through "166" as though fully set forth at length herein.
168. Plaintiff Yeung has exhausted her administrative remedies under Title VII of the Civil Rights Act of 1964, as amended.
169. In the summer of 2012, Plaintiff Yeung notified Dr. Janash and Defendant Jadadic of Dr. Nagy's sexual harassing behavior towards Group Health's patients, Plaintiff Mayo and other individuals involved with Group Health.
170. Dr. Janash and Defendant Jadadic informed Plaintiff Yeung that the matter would be looked into but Dr. Nagy remained employed at Group Health and his sexual harassing behavior continued.
171. In the spring of 2013, Plaintiff Yeung brought the issue of Dr. Nagy's sexual harassing behavior up with Dr. Janash and Defendant Jadadic again.
172. During this discussion, Plaintiff Yeung expressed her inability to work at Group Health if Dr. Nagy remained employed.
173. It was this ultimatum which finally prompted Dr. Janash to take remedial action and terminate Dr. Nagy's employment in 2013.
174. After Dr. Nagy's termination, Dr. Janash directed a series of false accusations towards Plaintiff Yeung.
175. Group Health retaliated against Plaintiff Yeung by engaging in conduct, including but not limited to, the following: terminating Plaintiff Yeung's employment with Group Health, falsely accusing Plaintiff Yeung of hiring Plaintiff Mayo away from Group Health, falsely accusing Plaintiff Yeung of diverting Group Health patients to her independent dental practice, falsely accusing Plaintiff Yeung of hiring a particular

Group Health dentist to perform outside work at her independent dental practice during his personal time, falsely informing various third parties that Plaintiff Yeung was unlawfully soliciting Group Health's clients and defaming Plaintiff Yeung's character and professional reputation.

176. Plaintiff Yeung engaged in protected activity by opposing discrimination in internal complaints about sexual harassment to Dr. Janash and Defendant Jadadic.

177. Plaintiff Yeung was subjected to materially adverse employment action by Group Health in retaliation for her complaints of sexual harassment.

178. On February 7, 2014, Plaintiff Yeung was terminated from her employment in retaliation for her complaints of sexual harassment.

179. Prior to February 7, 2014, Defendants never criticized Plaintiff Yeung's job performance or took any disciplinary action against Plaintiff Yeung.

180. Defendants expressed false and pretextual reasons for their decision to terminate Plaintiff Yeung's employment. As such, retaliatory motive was the "but for" cause of the termination.

181. As a result of the wrongful, willful and malicious retaliation against Plaintiff Yeung by Group Health, Plaintiff Yeung suffered lost wages, other employment-related benefits and income.

182. As a result of the foregoing, Plaintiff Yeung is entitled to recover compensatory damages and punitive damages in an amount to be determined at trial, expungement of all discriminatory motivated records, together with appropriate interest thereon, and an award of attorneys' fees, expert fees, costs and disbursements.

## FOURTH CAUSE OF ACTION

**(Retaliation in Violation of the New York State Human Rights Law and the New York City Human Rights Law on Behalf of Plaintiff Yeung)**

183. Plaintiffs hereby repeat and re-allege each and every allegation contained within paragraphs "1" through "182" as though fully set forth at length herein.

184. By the actions described above, among others, Defendants retaliated against Plaintiff Yeung on the basis of her protected activities in violation of the NYSHRL

and the NYCHRL by not engaging in any investigation of Plaintiff Yeung's complaints and ultimately terminating Plaintiff Yeung's employment.

185. In the summer of 2012, Plaintiff Yeung notified Dr. Janash and Defendant Jadadic of Dr. Nagy's sexual harassing behavior towards Group Health's patients, Plaintiff Mayo and other individuals associated with Group Health.

186. Dr. Janash and Defendant Jadadic informed Plaintiff Yeung that the matter would be looked into but Dr. Nagy remained employed at Group Health and his sexual harassing behavior continued.

187. In July 2013, Plaintiff Yeung brought the issue of Dr. Nagy's sexual harassing behavior up with Dr. Janash and Defendant Jadadic again.

188. During this discussion, Plaintiff Yeung expressed her inability to work at Group Health if Dr. Nagy remained employed.

189. It was this ultimatum which finally prompted Dr. Janash to take remedial action and terminate Dr. Nagy's employment in 2013.

190. After Dr. Nagy's termination, Dr. Janash directed a series of false accusations towards Plaintiff Yeung.

191. Defendants retaliated against Plaintiff Yeung by engaging in conduct, including but not limited to, the following: falsely accusing Plaintiff Yeung of hiring Plaintiff Mayo away from Group Health, falsely accusing Plaintiff Yeung of diverting Group Health patients to her independent dental practice, falsely accusing Plaintiff Yeung of hiring a particular Group Health dentist to perform outside work at her independent dental practice during his personal time, falsely informing various third parties that Plaintiff Yeung was unlawfully soliciting Group Health's clients and defaming Plaintiff Yeung's character and professional reputation.

192. Defendants' aforesaid conduct created an offensive, intimidating, hostile and discriminatory work environment for Plaintiff Yeung.

193. Plaintiff Yeung engaged in protected activity by opposing discrimination in internal complaints about sexual harassment to Dr. Janash and Defendant Jadadic.

194. Plaintiff Yeung was subjected to materially adverse employment actions by Defendants in retaliation for her complaints of sexual harassment.

195. On February 7, 2014, Plaintiff Yeung was terminated from her employment in retaliation for her complaints of sexual harassment.

196. Prior to February 7, 2014, Defendants never criticized Plaintiff Yeung's job performance or took any disciplinary action against Plaintiff Yeung.

197. The stated reasons for Plaintiff Yeung's termination were false and pretextual.

198. Retaliation was a motivating factor for the termination of Plaintiff Yeung's employment.

199. As a result of the wrongful, willful and malicious retaliation against Plaintiff Yeung by Defendants, Plaintiff Yeung suffered lost wages, other employment-related benefits and income.

200. As a result of the foregoing, Plaintiff Yeung is entitled to recover compensatory damages and punitive damages in an amount to be determined at trial, expungement of all discriminatory motivated records, together with appropriate interest thereon, and an award of attorneys' fees, expert fees, costs and disbursements.

**JURY DEMAND**

201. Plaintiffs herein demand a trial by jury of all issues in this action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that they be awarded the following relief:

a) On the first cause of action, appropriate injunctive and monetary relief, including an expungement of all discriminatory motivated records; compensatory and punitive damages in an amount to be determined at trial, together with appropriate interest thereon;

b) On the second cause of action, appropriate injunctive and monetary relief, including an expungement of all discriminatory motivated records; compensatory and punitive damages in an amount to be determined at trial, together with appropriate interest thereon;

c) On the third cause of action, appropriate injunctive and monetary relief, including an expungement of all discriminatory motivated records; compensatory and

punitive damages in an amount to be determined at trial, together with appropriate interest thereon;

d) On the fourth cause of action, appropriate injunctive and monetary relief, including an expungement of all discriminatory motivated records; compensatory and punitive damages in an amount to be determined at trial, together with appropriate interest thereon;

e) An award of attorney's fees, expert fees, costs and disbursements; and

f) Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
September 26, 2016

Respectfully Submitted,
**THE SELTZER LAW GROUP P.C.**

By: ____/s/__________________
Steven Seltzer
Counsel for Plaintiffs
11 Broadway, Suite 615
New York, New York 10004
T. (646) 863-1909

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MELODY MAYO and MIMI YEUNG,

Case No.:

Plaintiffs,

-against-

FRESH DENTAL P.C. d/b/a GROUP HEALTH DENTAL FACILITY, ESMIRA JADADIC and DAVID JANASH,

Defendants.

**COMPLAINT**

Attorneys for Plaintiffs
THE SELTZER LAW GROUP P.C.
11 Broadway, Suite 615
New York, NY 10004
(646) 863-1909

To:

Service of a copy of the within is hereby admitted.

Signature

Dated:________________ , _____

_____/S/___________________
Steven Seltzer, Esq.______

PLEASE TAKE NOTICE:
( ) NOTICE OF ENTRY
that the within is a (certified) true copy of a
duly entered in the office of the clerk of the within named court on 20__

( ) NOTICE OF SETTLEMENT
that an order of which the within is a true copy
will be presented for settlement to one of the judges of the
within named Court, at
on 20__ at AM.

Dated: Yours, etc.

THE SELTZER LAW GROUP P.C.